UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Almany Ismael Bangoura, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>Beiersdorf, Inc. and Bayer Healthcare, LLC,<br><br>*Defendant.* | Case No.: 1:22-cv-00291-BMC |

**DECLARATION OF JASON P. SULTZER IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS, AND APPROVAL OF <u>NOTICE PLAN</u>**

I, Jason Sultzer, submit this Declaration in support of Plaintiffs' Motion for Preliminary Approval of Settlement, Preliminary Certification of Settlement Class, and Approval of Notice Plan, and affirm that the following is truthful and accurate:

1. I am an attorney duly admitted before this Court. I am a partner at The Sultzer Law Group P.C., which, along with Levin Sedran & Berman LLP are counsel for Plaintiff in the above-captioned action.

2. I am one of the attorneys principally responsible for the handling of this case. I am personally familiar with the facts set forth in this declaration. If called as a witness, I could and would competently testify to the matters stated herein.

3. On January 18, 2022, Plaintiff Almany Ismael Bangoura filed suit concerning a Coppertone sunscreen product contaminated with benzene. *See* Dkt. 1 at ¶ 1. Plaintiff brought claims on behalf of a nationwide and New York subclass. He sued Defendants Beiersdorf, Inc. and

Bayer Healthcare, LLC for violations of, *inter alia*, New York GBL § 349, New York GBL § 350, and breach of express and implied warranties.

4. On March 24, 2022, Plaintiff filed an amended complaint that significantly expanded the at issue products. *See* Dkt. 21 ¶ 1.

5. Defendants then filed a pre-motion letter seeking permission to file a motion to dismiss, *see* Dkt. 22, in which they argued that Plaintiff lacked standing, Plaintiff was manufacturing a dispute because there was a recall, Plaintiff's state law claims were preempted, and Plaintiff failed to allege that Defendants had knowledge that the Covered Products contained benzene. Defendants also challenged Plaintiff's other claims on a variety of different bases.

6. Plaintiff responded to this pre-motion letter, *see* Dkt. 27, opposed Defendants' challenge to standing, described how his lawsuit is different than the recall, and opposed preemption, as well as Defendants' other challenges to his claims.

7. The parties attended a conference with the Court regarding Defendants' pre-motion letter during which it was decided that Plaintiff would again amend his complaint.

8. Plaintiff filed a second amended complaint on May 25, 2022. *See* Dkt. 28.

9. Defendants then filed another pre-motion letter, *see* Dkt. 29, to which Plaintiff had no opportunity to respond, as the Court waived the pre-motion conference and ordered the parties to brief the motion to dismiss Plaintiff's Second Amended Complaint.

10. Recognizing the uncertainties involved, the parties reached a class wide settlement and alerted the Court of the same on June 29, 2022. *See* Dkt.. 32.

11. Class Counsel worked together to thoroughly analyze the legal landscape, including conducting research into the various state consumer protection laws and available remedies, and

evaluating matters relating to class certification, in order to fully evaluate the risks and benefits to a potential early resolution.

12. Indeed, Class Counsel conducted a detailed and extensive analysis of the claims alleged in the Second Amended Complaint including the relevant FDA guidelines concerning labeling and advertising disclosure requirements for sunscreen, FDA guidelines regarding the presence of benzene in consumer products, the scientific research concerning the dangers of benzene, and research regarding how Defendants should have known the Products contained benzene.

13. Class Counsel also thoroughly analyzed the Valisure report, which identified one of Defendants' products as containing trace amounts of benzene.

14. In addition, Class Counsel hired an independent lab to conduct their own testing on certain of the Covered Products for the presence of benzene. The independent testing conducted by Plaintiff showed that some of the Covered Products did not contain detectable levels of benzene.

15. Moreover, Class Counsel analyzed the chain of distribution of the Covered Products and pricing per unit to help support and determine Plaintiff's damages model.

16. In addition, Class Counsel conducted research into the market segment related to the Covered Products to understand the potential scope of this matter and marketing and sales trends, practices, and patterns for the relevant industry.

17. Based on the Parties' exchange of informal discovery to date and their respective investigations into the claims and defenses asserted in the actions, the parties agreed to engage in settlement negotiations with a private mediator. In connection with the mediation, Class Counsel requested significant mediation discovery to evaluate the claims and position themselves to negotiate a settlement that would be fair and reasonable on behalf of the Settlement Class.

Specifically, Class Counsel requested, and Defendants produced, documents and information regarding the sales data of Covered Products throughout the Class Period as well as Defendants' quality control and testing procedures regarding contaminants including benzene. This is largely the information that Class Counsel would have reviewed had the matter proceeded to formal discovery.

18.     The settlement negotiations were conducted at arm's-length over a period of two months. Before and during these settlement discussions and mediation, the Parties had arm's-length exchange of sufficient information to permit Plaintiff and counsel to evaluate the claims and potential defenses and to meaningfully conduct informed settlement discussions. The Parties did not discuss Attorneys' Fees and Costs or any potential Incentive Award until they first agreed on the substantive terms of this settlement.

19.     On June 28, 2022 the Parties participated in an all-day mediation with JAMS mediator Hon. Steven M. Gold (Ret.) via Zoom.

20.     With the assistance of Judge Gold, the Parties reached an agreement in principle at the mediation session. However, the Parties continued to pursue settlement discussions for several weeks, working out the details of the settlement and culminating in the attached Settlement Agreement, which is the product of hard-fought, arm's-length negotiations.

21.     The Settlement Agreement resolves claims regarding Defendants' use of allegedly misleading labels on, and marketing and promotion concerning, the Covered Products. The Settlement Agreement provides significant monetary relief to the Settlement Class Members by way of a Settlement Fund of $2.3 million and meaningful injunctive relief that will implement, in connection with the Covered Products, testing for the presence of benzene and will address as test results warrant.

22. The Settlement provides relief above and beyond the voluntary recall initiated by Defendants by offering additional monetary compensation, increasing the amount of time relief is available and providing robust injunctive relief.

23. All parties executed the Settlement Agreement on August 1, 2022.

24. The Settlement Agreement seeks appointment of Angeion Group ("Angeion") as the Claim Administrator to effectuate and administer the Notice Plan.  Before selecting Angeion, Plaintiffs sought multiple bids from claims administrators and interviewed and vetted Angeion and its proposed notice plan for this settlement.

25. The Plaintiff selected Angeion based on its reputation for excellent work and breadth of experience administering other similar consumer class actions.

26. Class Counsel have reviewed the proposed notice plan and are satisfied that it is the best notice practicable.

27. Class Counsel are qualified, experienced, and generally able to conduct the Litigation. Class Counsel have invested considerable time and resources into the prosecution of the Litigation and possess a long and proven track record of the successful prosecution of class actions, including false advertising cases, and numerous appointments as class counsel.

28. The Sultzer Law Group has substantial experience with consumer class actions in general, and with consumer fraud and false advertising, specifically.  I have prosecuted and been appointed as lead counsel in numerous consumer fraud class action cases throughout the country in which I have recovered millions of dollars and obtained injunctive relief on behalf of consumers. My significant experience representing consumers in class action litigation is detailed more fully in my firm resume attached hereto as Exhibit 2.

29. Attached hereto as **Exhibit 1** is the Settlement Agreement with exhibits in this action.

30. Attached hereto as **Exhibit 2** is The Sultzer Law Group P.C.'s firm resume.

31. Attached hereto as **Exhibit 3** is Levin Sedran & Berman LLP's firm resume.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 1st day of August, 2022 in Poughkeepsie, New York.

/s/ *Jason P. Sultzer*

Jason P. Sultzer, Esq.
The Sultzer Law Group, P.C.
85 Civic Center Plaza, Suite 200
Poughkeepsie, New York 12601
Phone: (845) 483-7100
Facsimile: (888) 749-7747